268 So.2d 123 (1972)
Mrs. Carrie MELTON
v.
A. D. MIRE and The Travelers Indemnity Company.
No. 8992.
Court of Appeal of Louisiana, First Circuit.
October 2, 1972.
*124 Sherman F. Raphael and Donald F. de Boisblanc, New Orleans, for appellant.
John S. Campbell, Jr., and Shelby Mc-Kenzie, Taylor, Porter, Brooks & Phillips, Baton Rouge, for appellees.
Before LANDRY, ELLIS and TUCKER, JJ.
LANDRY, Judge.
This appeal by plaintiff, Carrie Melton (Appellant) is from a judgment rejecting her demands for damages for personal injuries and related medical expense sustained and incurred when a large limb from a live oak tree situated on the premises of defendant, A. D. Mire, insured of defendant, The Travelers Indemnity Company (Travelers), fell upon Appellant. It is conceded Appellant was an invitee who went to the home of defendant Mire to inquire about the rental of a residence from Mire who owned several rent houses. The trial court concluded plaintiff failed to establish Mire's alleged neglect to discover reasonably discoverable defects in the tree and either correct same or warn Appellant of the existence thereof. We affirm.
*125 Except as hereinafter otherwise noted, the facts of this controversy are virtually undisputed. The accident happened at about 3:00 P.M., on October 11, 1965, approximately 30 days following Hurricane Betsy which occurred September 9-10, 1965. Within two or three days of the storm, Mire proceeded to clean up his premises with the aid of his three sons. In addition to subject tree, which practically overhung the Mire residence, Mire's premises contained three other large oaks, all of which were quite old. Clean up operations consisted of removal of all fallen limbs and debris. The limbs were cut up and hauled away, the larger ones being removed with the aid of a tractor. The record reveals that Mire and his sons inspected each tree from the ground and observed no attached limbs which appeared to be broken or otherwise dangerous. The limb which fell measured 30 inches in diameter and was about 40 feet in length. It fell on a clear windless day without any warning whatsoever. Subject tree measures 66.8 inches in diameter, four and one-half feet above ground; its age is estimated at between 160 and 200 years, and the limb which fell constituted approximately one-third of the tree which is alive and growing. The limb which fell is of solid growing wood. A five inch cavity existed in the crotch where subject limb joined the trunk of the tree, said cavity being visible only from a position above the limb itself which was an estimated 15 feet above the ground.
Appellant, who had been driven to defendant's premises by an acquaintance, Mrs. Paul Bourgeois, was injured as she and Mrs. Mire were walking toward the Mire residence after Appellant had gotten out of the Bourgeois' automobile. The limb struck Appellant, and also fell upon the Bourgeois car. Mrs. Mire and two of her grandchildren were also under the tree when the limb fell. The falling limb rendered Mrs. Mire and both of her grandchildren unconscious, one of the children also suffering a broken arm.
After the storm, Mr. Mire and his sons worked beneath the tree subsequent to making such visual inspection as could be made from ground level. They considered it safe to proceed with clean up operations. When the clean up work was finished, Mr. and Mrs. Mire walked beneath the tree, parked the family automobile beneath the tree and permitted their grandchildren to play under and around the tree when the children visited their grandparents. Mr. and Mrs. Mire testified they would not have knowingly endangered their own lives and those of their grandchildren had either of them known the limb in question was dangerous in any way whatsoever. Based on the foregoing, the trial court concluded Mr. Mire had no actual knowledge of any defect in the limb or tree. We concur in this finding.
The duty of care owed by an owner to an invitee going upon the owner's premises is that of reasonable care commensurate with the nature of the premises. In this regard, we quote approvingly from Kennedy v. Columbia Casualty Company, La.App., 174 So.2d 869, as follows:
"The occupant or owner (invitor) owes his invitee the duty of ordinary and reasonable care which means the obligation of maintaining his premises in a condition reasonably safe for use consistent with the purpose of the invitation including the discovery of reasonably foreseeable conditions which may be dangerous and result in injury, especially where there is time for correcting the perilous condition or giving warning to the invitee of the danger.
The owner or occupant is not the insurer of the safety of his invitees and therefore is not obliged to protect him against the possibility of accident but rather owes the duty of exercising ordinary and reasonable care for the safety of the invitee commensurate with the nature of the premises, the use envisioned by the *126 invitation to enter and the particular circumstances involved."
In essence Appellant contends the limb which fell was cracked or damaged during Hurricane Betsy which occurred during the preceding month, and that the resulting defect could or should have been observed by defendant Mire upon reasonable inspection. Appellant also contends that because of the widespread damage wreaked by the storm, Mire should have engaged the services of a professional to examine each of the trees, and had Mire obtained the services of an expert, the dangerous condition of the tree would have been discovered. In addition, Appellant urges that in view of the force and extent of the preceding storm, reasonable care demanded more than the mere cursory examination made by Mire himself.
Appellant's position is based primarily upon the testimony of J. B. Keith, a tree surgeon having 25 years experience in the field, but no degree in forestry or horticulture. Keith visited defendant's premises on two occasions, February, 1968, and February, 1969, in each instance conducting a 15 to 20 minute inspection. He did not measure either the tree or the fallen limb, his examination being limited to viewing the tree and the sawed remains of the limb. Keith admitted his examination would have been more meaningful had he been able to examine the limb intact following the accident. He conceded the limb was healthy and growing, but was of the opinion the storm cracked the limb to such extent it should have been visible even to an untrained eye because such a healthy limb would not have fallen as it did without having been damaged by the prior storm. He conceded that a crack would have had to begin at the top of the crotch. In substance Keith was of the opinion that the limb just had to be cracked in order for it to fall.
Defendant's expert, Walter C. Snyder, graduate Forester with many years experience, first examined the tree in March, 1968. He noted evidence of a five inch cavity at the top of the crotch of the fallen limb, otherwise he found the limb and tree to be alive, healthy and growing at the time of the accident. In Snyder's opinion, the cavity could not have been noted from ground level because it was probably filled with an accumulation of debris in addition to being located at the top of the crotch. He was of the view that the limb fell because the area of adhesion to the tree trunk did not continue to grow commensurate with limb growth and, due to said condition, the limb attained a weight that the area of adhesion could not sustain. Snyder explained that the bark of a live oak is by nature rough and cracked. He noted that the faster such a tree grows, the rougher its bark becomes due to splitting and cracking resulting from tree growth and expansion. Snyder was of the opinion the limb may or may not have been cracked by the storm, but that if such a defect existed, it could easily have escaped detection from the ground, especially by an untrained eye.
Appellant offered the testimony of her son, Robert, in an effort to show that defendant Mire was aware of damage to his trees following the hurricane, and thus should have been put on notice of other possible defects. Mr. Melton testified that following the storm and before the accident, he was driving past the Mire property at a speed of approximately 25 miles per hour and observed the Mires in the process of cleaning up. He stated he saw a rope attached to one of the trees and being pulled on by a tractor in an effort to either pull down the tree or a limb. He could not identify the particular tree involved. This testimony was contradicted by that of Mr. and Mrs. Mire who denied that a tractor was used to pull down any limb or limbs whatsoever. The Mires' testimony in this regard was corroborated by that of a neighbor, Mrs. Elphage Babin, who stated she was present and observed the Mires' clean up operations. The trial court resolved this conflict of testimony in favor of defendants. We concur in this finding.
*127 As did the trial court, we find that defendant discharged the duty incumbent upon him of exercising ordinary and reasonable care commensurate with the nature of his premises and the use envisioned by the invitation to enter. The degree of inspection employed by Mire was all that could be reasonably demanded of an ordinarily prudent owner. The limb which fell was located 15 feet above ground level. To all outward appearances, the limb did not appear rotten, dead or defective in any manner whatsoever. Nor does the record sustain Appellant's contention that the limb was cracked to such extent this alleged defect could and should have been discovered by Mire upon inspection from ground level. We also find that under the circumstances, it was not incumbent upon the owner to climb the tree and inspect each limb for possible defects. To impose such a duty, under the circumstances of this case, would, in our opinion, exact of the owner far more than the duty of ordinary and reasonable care. It would, in our judgment, render the owner the insurer of the safety of his invitees, an onus the law does not ordain.
We also find no failure on Mire's part to exercise reasonable care based on his neglecting to employ an expert to examine the tree following the storm. To impose such an obligation on an owner in every such instance, regardless of the circumstances, would require not ordinary care but extraordinary care tantamount to making an owner the insurer of the safety of his invitees. In Rector v. Hartford Accident and Indemnity Company of Hartford, Conn, La.App, 120 So.2d 511, this Court held that the mere presence of some defective trees on an owner's premises did not impose the burden of expert examination of trees which, to all outward appearances, were healthy. We think the foregoing principle announced in Rector, above, is applicable herein. We hold that the duty of care required of an owner, in instances of this nature, does not require expert examination of a tree merely because it has been subjected to a storm where, following the storm, the tree exhibits no reasonably discoverable evidence of defects or unsoundness.
Appellant also complains of the trial court's refusal to allow cross-examination of Mrs. Mire. Appellant contends that although Mrs. Mire is not a party litigant, nevertheless her relationship to defendant Mire being that of one-half owner of the property belonging to the community between them, Mrs. Mire falls within the term "representative" as used in LSA-C.C.P. art. 1634. In so contending, Appellant relies upon Edwards Bros. v. Berner, 154 La. 791, 98 So. 247 (1923). Berner, however, is totally inapposite. It was decided prior to enactment of Act 310 of 1940, which statute first authorized cross-examination of a litigant's "representative", and it involved an instance in which husband and wife were both parties defendant in the suit. In this instance, Mrs. Mire is not a party.
Article 1634, above defines "representative" as "an officer, agent, or employee having supervision or knowledge of the matter in controversy, in whole or in part, whether or not he is in the employ of or connected with the party at the time his testimony is taken." Unquestionably Mrs. Mire had some knowledge of the matter in controversy. Equally certain is the fact that she was neither the officer nor employee of Mr. Mire. The pivotal question, therefore, is whether she was the "agent" of Mr. Mire.
We deem it elementary that the status of wife does not per se constitute a married woman the "agent" of her husband in all matters relating to community affairs, notwithstanding the wife's ownership of an undivided one-half in all property belonging to the community between spouses. Our law gives the husband total control and charge of all community affairs and all property belonging thereto. While a husband may appoint, name or designate his wife as his agent to serve or *128 fulfill a community function (see LSA-C. C. art. 1787), such appointment or designation must depend upon the facts of each individual case. The record before us is devoid of evidence even remotely suggestive of Mr. Mire having, either expressly or impliedly, appointed his wife his agent to handle any phase of the matter in question. So far as the record discloses, Mr. Mire assumed full charge, supervision and control of the matter of clearing his premises after the storm. Since Mrs. Mire was not her husband's agent as regards the transaction in question, it follows that the trial court properly disallowed her cross examination pursuant to LSA-C.C.P. art. 1634.
The judgment of the trial court is affirmed; Appellant to pay all costs of these proceedings.
Affirmed.