321 So.2d 30 (1975)
Aaron THOMAS et al., Plaintiffs and Appellees,
v.
HANOVER INSURANCE COMPANY, Defendant and Appellant.
No. 5170.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1975.
Dissenting Opinion October 23, 1975.
Rehearing Denied November 13, 1975.
*31 Lewis & Lewis by John M. Shaw, Opelousas, for defendant and appellant.
Pucheu & Pucheu by Jacque B. Pucheu, Jr., Eunice, for plaintiffs and appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
Plaintiffs seek damages for personal injuries sustained when Mrs. Agnes Thomas stepped on a mouse and slipped and fell in laundramat. The defendant is the liability insurer of Convenient Wash & Dry, Inc., lessee and operator of the laundramat. The trial judge found defendant liable. He awarded to Mr. Thomas $1,876 for medical expenses and to Mrs. Thomas $10,000 in general damages plus $592.28 for loss of income. Defendant appealed.
The injuries occurred on March 6, 1973 at about 8:30 p.m. Plaintiff, a school teacher, had gone to the laundramat to dry a bedspread. After placing the spread in the dryer, she seated herself in one of a row of chairs provided for customers' use and began grading school papers. Shortly after she sat down, she felt something on her foot. She looked down and saw a mouse. She screamed and jumped from her seat. It is not clear from the evidence whether she jumped once or twice. The testimony shows she did not intend to jump on the mouse. Nevertheless, her foot came down on the mouse, mashing it on the floor. This caused her foot to slip. She fell and injured her hip and back.
There is little dispute as to the facts. The principal issue is whether, under *32 the duty-risk method of analysis established by our Supreme Court, defendant's insured is liable to plaintiffs. Under the duty-risk method, there are usually the following inquiries: (1) What, if any, duty was owed by defendant to plaintiff? (2) Was there a breach of the duty? (3) Was the breach of duty a substantial cause in fact of the injury? (4) Was the risk and harm within the scope of the protection afforded by the duty breached? Jones v. Robbins, La., 289 So.2d 104 (S.Ct.1974); Hill v. Lundin, La., 256 So.2d 620 (S.Ct.1972).
THE DUTY
The duty of the operator of the laundramat is well established by our jurisprudence. Shopkeepers are not insurers of the safety of their patrons. They owe them a duty to maintain the premises in a condition reasonably safe for use in a manner consistent with the purposes of the establishment. Stewart v. Gibson Products Company of Natchitoches Parish, 300 So.2d 870 (3rd Cir. 1974); Sigler v. Mt. Vernon Fire Insurance Company, La.App., 201 So.2d 656 (3rd Cir. 1967). This includes the duty to discover reasonably discoverable conditions on the premises which may foreseeably constitute a hazard to business guests. Jones v. Firemen's Fund Insurance Company, La.App., 298 So.2d 337 (3rd Cir. 1974). But the storekeeper is not liable for injury resulting from a hazard unless it is shown that he had actual knowledge thereof, or that he had constructive knowledge, as by his failure to make reasonable inspections. Levine v. Hartford Accident & Indemnity Company, 149 So.2d 433 (3rd Cir. 1963); Fedrowisch v. Fidelity Phenix Insurance Company of the Continental Insurance Companies, 265 So.2d 618 (1st Cir. 1972).
We find no case in which the specific issue was the duty of a shopkeeper to keep the premises free of mice. However, we think that if the circumstances are such that mice would constitute an unreasonable risk of foreseeable harm to customers, the shopkeeper has a duty to take reasonable precautions to keep these rodents from his premises. In a business establishment such as a laundramat, where the customers are principally women, whose fear of mice is well known, a reasonably foreseeable hazard is that if a woman sees a mouse on or near her person, she will jump or run and, in so doing, may suffer injury.
BREACH OF THE DUTY
Under these rules, let us examine the facts of the present case to determine whether the operator of the laundramat breached its duty. Plaintiffs contend that most of the time the laundramat was littered with candy wrappers, food droppings, potato chips, fritos, soft drink containers and other food particles which attracted mice. They argue that the defendant, through its employees, had actual or constructive knowledge of the filthy condition of the premises and knew or should have known this would attract mice, which would constitute a hazard to female patrons.
The evidence shows that during the period of time in question, Mr. Miller, the manager, had employed Mrs. Onezime Courville, who lived next door to the laundramat, to clean and watch after it. Mrs. Courville testified that she swept and mopped the floor of the laundramat every morning at about 7:00 a.m. However, during the day and in the late evening the place usually became filthy because customers would not place their trash in the cans which were provided. They dropped their candy wrappers, bits of food, potato chips, fritos and soft drink bottles all over the floor. She also stated that "kids" would congregate in the laundramat and contribute to the litter. On some occasions, she would go back in the evening and empty the trash cans and do some cleaning. On week ends, usually Sunday *33 afternoon, Mr. and Mrs. Miller went to the laundramat and gave it a thorough cleaning.
As to the particular question of the presence of mice on the premises, Mrs. Courville testified that on one occasion prior to the accident she had seen a mouse. She informed Mrs. Miller, and traps were put out, but no mice were caught. After failure to catch any mice, the traps were picked up and placed in a closet.
The only other evidence of mice in the laundramat was the testimony of Patricia Hebert. She testified she was a frequent customer and that on one occasion she saw three small mice in the laundramat. However, she did not report this to Mrs. Courville or to the Millers.
Immediately after the accident, Mr. Miller employed Terry Bertrand, who operates a pest control service, to investigate for evidence of mice. Bertrand found no nests, tracks or other indications of the presence of mice on the premises. He placed poisoned bait in different locations about the laundramat, but he found no evidence that any of the bait had been eaten. Mr. Bertrand testified that food attracts mice and if an abundance of food is present, they are less likely to eat the poisoned bait. He said that mice also enter buildings to make nests or to find shelter from bad weather.
Under the evidence outlined, we conclude that the operator of the laundramat, either through Mrs. Courville or Mr. Miller, had knowledge that usually in the evenings the laundramat was littered with food droppings and other trash. On the night of the accident in question here, several witnesses testified that the floor of the laundramat was "filthy" and that the trash cans were overflowing. We also conclude a preponderance of the evidence shows the mouse was in the laundramat because it was attracted there by the food on the floor. We find also that the operators of the laundramat knew or should have known that the food particles would attract mice. Yet, they failed to take reasonable precautions to keep these rodents from the premises. They allowed the premises to remain in a filthy condition most of the time, and they failed to employ a pest control service on a regular basis prior to the accident.
We conclude that under the circumstances of this case the operators of the laundramat had a duty to take reasonable precautions to keep the premises free of mice and that they breached this duty.
CAUSATION
There is no question that the breach of the duty to keep the premises free of mice was a substantial cause in fact of the injuries suffered by Mrs. Thomas. She felt the mouse on her foot, saw it, screamed and attempted to jump away from it. In so doing, she accidentally stepped on the mouse and slipped and fell.
RISK AND HARM WITHIN PROTECTION OF THE DUTY
In Hill v. Lundin & Associates, Inc., supra, the court stated:
"All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises."
In the present case, the duty breached was to take reasonable precautions *34 to keep mice out of the premises. A purpose of this duty was to protect against the risk that a woman might become frightened by a mouse and, in attempting to flee, suffer injury. This is precisely the risk and harm suffered by Mrs. Thomas. Although we have here the unusual fact that Mrs. Thomas stepped on the mouse, and this caused her foot to slip, the result would be the same had she not stepped on the mouse but, instead, had fallen from the chair or had attempted to run and fell over some other object.
QUANTUM
Defendants also contend the award of $10,000 to Mrs. Thomas in general damages for her pain and suffering is excessive. They suggest the award should be reduced to no more than $3,500.
On March 7, 1973, which was the day after the accident, plaintiff was examined by Dr. R. E. Landreneau, Jr. who hospitalized her for a period of ten days. He found bruises and contusions over her hip and low back, with ligamentous injury in the area of the lumbar spine. While in the hospital, she was treated with physical therapy and drugs for pain and muscle relaxation. On her discharge from the hospital, she continued physical therapy for about six weeks and then continued to see Dr. Landreneau until he discharged her on August 27, 1973. Here total medical expenses were $1,876.76.
At the trial on August 25, 1974, Mrs. Thomas testified she was still having pain in her back after sitting in her classroom for long periods of time. She is a woman who weighs 185 pounds and this has prolonged her recovery from the back injury.
Under all of the circumstances, we are unable to say that the trial judge abused his great discretion as to the quantum of the award in general damages for personal injuries.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
Affirmed.
HOOD, J., dissents and will assign written reasons.
HOOD, Judge (dissenting).
I am unable to agree with my colleagues in their conclusions either as to liability or as to quantum.
The law is settled that the proprietor or occupier of a commercial establishment must exercise ordinary care to keep his premises in a reasonably safe condition for his customers. The law, however, does not make the proprietor the insurer of the safety of invitees, and he is not liable for injuries sustained by a customer who falls while on the business premises unless the claimaint establishes that his injuries were caused by the proprietor's negligence. The burden of proof rests on the injured claimant to establish negligence on the part of the owner or occupier of those premises. Levine v. Hartford Accident and Indemnity Company, 149 So.2d 433 (La.App. 3 Cir. 1963); Fedrowisch v. Fidelity-Phenix Insurance Companies, 265 So.2d 618 (La.App. 1 Cir. 1972); Lofton v. Travelers Insurance Company, 208 So.2d 739 (La.App. 3 Cir. 1968); Travis v. Winn-Dixie Louisiana, Inc., 269 So.2d 550 (La.App. 1 Cir. 1972); Melton v. Mire, 268 So.2d 123 (La.App. 1 Cir. 1972); Harper v. Great Atlantic and Pacific Tea Company, 257 So.2d 468 (La.App. 1 Cir. 1972).
The proprietor owes a duty to his invitee to keep his premises safe from hidden dangers, in the nature of traps or pitfalls, which are not known to the invitee and would not be observed and appreciated by him in the exercise of ordinary care. This includes the duty of reasonable prior discovery of such unobservable dangerous *35 conditions on the premises, and the correction of them, or a warning to the invitee of the danger. Levert v. Travelers Indemnity Company, 140 So.2d 811 (La.App. 3 Cir. 1962); Mouton v. Vanguard Insurance Company, 293 So.2d 604 (La.App. 3 Cir. 1974); McCauley v. Nicholas, 297 So.2d 914 (La.App. 1 Cir. 1974).
The mere fact that an accident occurs resulting in injuries to the invitee does not give rise to a presumption that the proprietor was negligent. Levine v. Hartford Accident and Indemnity Co., supra. The invitee assumes all normally observable or ordinary risks attendant upon the use of the premises. The occupier is not liable for an injury to an invitee resulting from a danger which is observable, or which should have been observed, by the invitee in the exercise of reasonable care, or from a danger which the invitee should reasonably have appreciated before exposing himself to it. Levert v. Travelers Indemnity Company, supra; Foggin v. General Guaranty Insurance Company, 250 La. 347, 195 So.2d 636 (1967); Mitchell v. Aetna Casualty and Surety Company, 284 So.2d 636 (La.App. 3 Cir. 1973); Jones v. Fireman's Fund Insurance Company, 298 So.2d 337 (La.App. 3 Cir. 1974).
The application of these established rules to the facts in the instant suit convinces me that the proprietor of the laundromat involved here was not negligent, and that the defendant insurer thus is not liable to plaintiff and for the damages she sustained.
The majority has pictured the laundromat in which this accident occurred as having been maintained in a "filthy condition." That conclusion was drawn largely from the testimony of Mrs. Onezime Courville, who had been working at that establishment for approximately one and one-half years before this accident occurred. She quit working for the proprietor shortly after the accident. The record does not show why her employment was terminated, but her testimony indicates to me that she was antagonistic toward her former employer.
Mrs. Courville's duties were to oversee the laundromat and to keep it clean. Byron Miller, president of the corporation which owned the business at the time of the accident, no longer has an interest in the laundromat, and neither he nor the corporation is a defendant in this suit. Miller thus has nothing to gain or to lose by the outcome of this litigation. He testified that Mrs. Courville was employed as the "overseer" or "clean up lady" for the laundromat, and that her responsibility was "cleaning" and to report any damages to the premises. He stated that it was her duty to clean the place of business "whether it would be in the morning or afternoon, but she was responsible to clean it at least once a day." He testified that he and his wife also gave the premises a thorough cleaning at least once a week, which included cleaning the dryers, cloroxing the floors, washing the windows, vacuuming behind the dryers and washing down the parking lot.
Although Mrs. Courville appeared to be prejudiced against the defendant's insured, in my opinion even her testimony does not indicate that the laundromat was as dirty as the majority feels that it was. She testified that she was the "caretaker" of the establishment, that she cleaned it thoroughly every morning, including mopping the floors, and that frequently she would go back during the afternoons and at night to clean it again. In addition to that, she stated that the proprietors would come on weekends and give the premises a thorough cleaning. She testified that children frequently would leave candy wrappers, candy, cookies and crumbs on the floor, but that when that occurred she would pick up those items and put them in the trash can. She testified that garbage cans were put out and were picked up every day, except Sunday, and that she saw only one mouse in the place of business during the entire time she worked there. She *36 stated that she reported seeing the mouse to Mr. Miller, and that she immediately began setting traps for it every night, but that she never caught one, and that she never saw any rat droppings or evidence of any mice having been in the building. She also stated that the door of the building would remain closed at all times, except when patrons opened it to enter or leave the building, or when they occasionally would prop it open. She complained to the owner about customers propping the door open, and she indicated that the owner thereupon put up signs requesting that they not do so, but that the signs were torn down by customers. She said that the owner instructed her to "call the law" when children or anyone else would play boisterously in the building or would leave candy wrappings and cookies on the floor, and that she did call the law on those occasions.
The building in which the laundromat was located was a relatively new, steel building, which was constructed on a concrete slab. The slab was raised a substantial height above the concrete parking lot in front of it, and the pictures introduced in evidence show that the building was a very neat and substantial structure. There was only one entrance or exit to it, and that was the front door, which was made of metal and was equipped with an automatic door closer. The door operated properly, and it would effectively keep out mice or any other types of pests when the door was closed.
Immediately after this accident occurred, the proprietor called in a pest exterminator who found no evidence of any mice having been in the laundromat at any time. I think this establishes that there were no mice in that establishment, and it shows that the proprietor was reasonable in assuming that there was no danger of mice getting into the building.
The majority concludes that the mouse which caused plaintiff's fall was attracted into the laundromat because of "food on the floor." They base that conclusion on the testimony of the pest control expert who testified that mice enter buildings for food and "to make nests and to find shelter from bad weather." In this instance, the evidence shows that no mice had made nests in the building and the weather was not bad at the time this accident occurred. Although there may have been some very minimal scraps of food on the floor, such as the candy which might remain on candy wrappers and bits of potato chips and fritos, that small amount of food obviously had not attracted mice regularly to the laundromat before the accident, and there was no reason for the defendant's insured to anticipate that it would attract a mouse into the building at any time, especially since a grocery store which had large quantities of food in it was located next door to the laundromat.
I do not believe that the operator of the laundromat was negligent in having "failed to employ a pest control service on a regular basis prior to the accident." The proprietor had heard of one mouse having entered the building at an unspecified time prior to this accident. Precautions were taken promptly to trap the mouse, but no evidence was found thereafter of any mice having ever been in the building. A later expert investigation showed that no mice, in fact, had been in the structure. Under those circumstances I think it is unreasonable to hold the proprietor, or its insurer, liable because the owner did not engage a pest control service regularly to treat the building.
After considering all of the evidence and the duty which the operator owed to plaintiff, my conclusion is that the owner or operator of the laundromat was not negligent. In my opinion the trial judge erred in rendering judgment for plaintiff. I would reverse the judgment appealed from.
Even if plaintiff should be entitled to recover in this case, I think the award made by the trial court is excessive and should be reduced. Plaintiff suffered minimal *37 pain as a result of this injury. She lost only fourteen days of work. She was discharged from further medical treatment about six months after the accident occurred, and she has no residual disability or symptoms of any kind resulting from the accident.
For these reasons, I respectfully dissent.