705 So.2d 286 (1997)
Dewandya POWELL, Plaintiff-Appellant,
v.
BROOKSHIRE'S GROCERY COMPANY, INC., d/b/a Super One Foods and Hartford Insurance Company, Defendant-Appellee.
No. 30,047-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1997.
*287 Guerriero & Guerriero by Joe D. Guerriero, Monroe, for Plaintiff-Appellant.
Theus, Grisham, Davis & Leigh by Sharon Ingram Marchman, Monroe, for Appellee.
Before MARVIN, STEWART and GASKINS, JJ.
GASKINS, Judge.
The plaintiff, Dewandya Powell, appeals from a trial court judgment rejecting her claim for damages allegedly arising from a knee injury that occurred when the plaintiff picked up a can of milk in a grocery store and found a dead mouse attached to it. The plaintiff claimed that she was startled and struck her knee on a pole, causing severe injury. We affirm the trial court judgment.

FACTS
On June 7, 1994, the plaintiff accompanied her friend, Eula Green, to the Super 1 grocery store in Monroe. The store is operated by Brookshire's. Each lady selected a shopping cart and proceeded to collect her groceries. When the plaintiff picked up a can of milk, she claims that her hand came into contact with a small, dead mouse that was attached to the can. The plaintiff contends that she threw the can down, screamed and began running to try to get away. She also claimed that the mouse's tail came off and contacted the back of her hand. The plaintiff asserted that she struck her knee on a post in the store aisle, causing a severe injury which ultimately required her to have arthroscopic surgery to correct a ligament tear and to clean out material that was floating in the space in her knee.
On May 22, 1995, the plaintiff filed suit for damages against Brookshire's Grocery Company d/b/a Super 1 Foods and its insurer, Hartford Insurance Company. The matter was tried on November 12 and 13, 1996.
Ms. Green, the plaintiff's shopping companion, testified that she heard the plaintiff *288 "holler" and went to her aid. She said in pretrial discovery that she saw the plaintiff strike her knee on a pole in the aisle. At trial, Ms. Green testified that she did not see the plaintiff strike her knee on the post but that she saw the mouse, saw that her friend was upset and stated that the plaintiff nearly tipped over with her buggy. Ms. Green stated that she steadied the plaintiff and then sought store personnel to report the incident.
Store employees testified that there was a mouse on the can of milk, but that the can was sitting upright on the shelf with the mouse on top, disputing the plaintiff's testimony that she threw the can. They also denied that the plaintiff reported any injury to them at that time.
The plaintiff presented the testimony of her orthopedic surgeon, Dr. Douglas C. Brown. Dr. Brown stated that he had treated the plaintiff for an injury to her left knee in February, 1994 when the plaintiff, who is a nightclub singer, slipped and fell on stage, twisting her knee. He also saw the plaintiff on June 23, 1994, over two weeks after the grocery store incident, for treatment of the left knee. He testified that he thought the June injury was a new one and not the same injury as the plaintiff had in February.
The plaintiff underwent physical therapy following the surgery and was seen regularly by Dr. Brown. By August, 1995, the plaintiff's x-rays showed that she was developing arthritis behind the knee cap. In February, 1996, Dr. Brown determined that the plaintiff had a 35% disability in her leg.
The trial court was convinced that there was a mouse on the milk can, but was not persuaded that the plaintiff suffered any serious injury. The court acknowledged that Dr. Brown felt that the plaintiff had a new injury in June, 1994. However, the court was concerned over the numerous versions of the incident related by the plaintiff. Finding that the plaintiff was not credible, and based upon the totality of the testimony and evidence, the court found that the plaintiff failed to meet her burden of proof of showing that she was injured. The trial court entered judgment in favor of the defendant, rejecting the plaintiff's claims at her cost.
The plaintiff filed a motion for new trial, arguing that the uncontradicted evidence established that the plaintiff reached for a can of milk, touched the mouse and sustained great mental anguish, emotional upset and distress. The plaintiff further argued that the evidence shows that she injured her knee at the time of this incident and that any discrepancy between the plaintiff's testimony and that of Ms. Green concerning whether the post caused the injury or whether the plaintiff twisted her knee when she fell into the buggy "is of no import." The plaintiff claimed she should be awarded damages for touching the mouse, regardless of whether the court accepts that her knee was injured. The motion for new trial was denied on December 3, 1996. The plaintiff then appealed the trial court judgment.

PHYSICAL INJURY
As her only assignment of error, the plaintiff claims that "the trial court conclusion that the plaintiff's testimony was not credible is contrary to the other eye witness testimony and general evidence and fails to account for the uncontradicted evidence that there was a dead rodent stuck to the milk can on the shelf of defendant's grocery store as no award was made for that part of plaintiff's claim." The plaintiff seems to argue that the trial court erred in finding her testimony not to be credible and erred in failing to award damages, even for touching the mouse.[1] We find this argument to be without merit.
*289 A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court has announced a two-part test for the reversal of a factfinder's determinations: 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Mart v. Hill, 505 So.2d 1120 (La. 1987); Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, supra.
In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, supra.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though the appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, supra; Stobart v. State, Through Department of Transportation and Development, supra.
Where documents or objective evidence so contradict the witness's story or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one or two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra; Stobart v. State, Through Department of Transportation and Development, supra.
As noted by the trial court, there is no dispute that the plaintiff found a mouse on a can of milk in the defendant's grocery store. Brent Henry Wagner, assistant manager for the defendant, testified that he was on duty on June 7, 1994. He stated that someone directed him to the baking aisle and he saw a small, dead mouse on the top of a can of milk. At the time of the incident, the plaintiff did not report that she had suffered any injury. Elvin Edward Spears, Jr., Reginald Chapman and David Vaughn were store employees who were also present when the mouse was discovered. They all agreed that there was a mouse on the can of milk.
Further, the plaintiff presented the testimony of her orthopaedic surgeon, Dr. Douglas C. Brown, to establish that she had a medical problem with her left knee. Dr. Brown testified that he treated the plaintiff for an injury to her left knee in February, 1994, when she slipped and fell on stage during the course of her nightclub act. Dr. Brown testified that in June, 1994, he again *290 treated the plaintiff for an injury to her left knee. At that time, he found that the knee was swollen and inflamed, that the ligament on the inside of the knee seemed loose and the knee cap was tilted. Upon examination during the week of July 14, 1994, Dr. Brown suspected that the plaintiff had a torn ligament in her knee. On September 6, 1994, Dr. Brown drained approximately two ounces of blood from the plaintiff's knee. The plaintiff underwent outpatient surgery on her knee on September 22, 1994. Dr. Brown found several loose bodies floating in the joint and removed them. He testified that these bodies were calcified and had been present in the knee for some time. He also found a large tear in the medial meniscus and found an area of cartilage the size of a quarter that had worn away on the end of the femur. On cross-examination, Dr. Brown stated that the plaintiff's knee injury could have been caused by a direct blow or it could have occurred over time, however the meniscus tear is usually caused by a twisting injury. Dr. Brown testified that the injury he observed in June, 1994 was a new injury from the one he treated the plaintiff for in February, 1994.
The disputed issue is whether the plaintiff established that she injured her knee in the grocery store as a result of discovering the mouse. The trial court found that the testimony of the plaintiff and Eula Green contained so many inconsistencies that there was no credible evidence that the plaintiff injured her knee in the store. The trial court's finding is supported by the record.
The record contains a photograph of the aisle where the plaintiff discovered the mouse. The aisle is approximately ten feet wide and the grocery items are on metal shelves. Metal support poles which appear to be part of the shelf are visible about every six feet. The posts are square and are about 3 inches wide. On this particular aisle, canned milk is on one side of the aisle and spices are on the other side. The plaintiff testified that she and Ms. Green were shopping on this aisle, with Ms. Green being a little bit ahead of her.
At trial, the plaintiff testified that she reached for a can of milk and there was a mouse on the can. She then threw the can and ran, hitting her knee on the metal post on the opposite side of the ten foot wide grocery aisle. She then saw that the mouse tail was on her hand. She got it off and grabbed for her buggy because she was falling. She stated she then bounced back on the milk side of the aisle and grabbed for her buggy. The buggy flipped up and Ms. Green grabbed it.
In the plaintiff's deposition given in preparation for trial, she stated that she and Ms. Green were on the aisle with the canned milk and Ms. Green was slightly ahead of the plaintiff. The plaintiff reached onto a shelf at about shoulder height and picked up a can of milk. She looked down and saw the mouse, threw the can back on the shelf. She then started running and screaming and ran into the post, knocking some items off the spice shelf.
In an answer to an interrogatory posed by the defendant regarding the incident, the plaintiff responded as follows:
On Tuesday, June 7, 1994, at approximately between 6:30 p.m. and 7:00 p.m., I entered Super One Grocery Store with my friend Eula Green to purchase a few items. As my friend and I shopped, me on one side of the aisle and my friend on the other side, I reached for a can of milk. As I picked up the can, I felt something funny in my hand. As I looked down at my hand, that is when I discovered it was a dead mouse or rat. I screamed, shook my hand, dropped the can and began to run. As I started to run, I tripped and fell against the pole striking my left knee and then fell back against the shelf with the cans of milk to break my fall. The dead mouse or rat then fell into the box of cans of milk....
The emergency room record where the plaintiff originally sought treatment for her knee reflects that the plaintiff stated that she twisted her ankle and hit her knee on a wall in the Super 1 store.
Dr. Brown testified that he thought the plaintiff had seen a rat in the frozen food section and had struck her knee on a post *291 that was there to prevent buggies from running into the frozen food case.
The plaintiff's physical therapy record shows that the plaintiff claimed she injured "her left knee in Super 1 Foods in Monroe when she picked up a can with a dead rat on it, turned around to shake it off of her hand, and hit a wall, causing the buggy to fall on her left leg."
In the accident report filed out by the defendant, the accident is described as follows: "Customer said she saw a `Rat' in the can (sic) milk section. When we investigated we found a small mouse 1½ inches long. Customer was upset and said it just really surprised and scared her."
The plaintiff's witness, Eula Green, also gave several inconsistent versions of the incident. In her affidavit, Ms. Green "stated that she saw that Dewandya Powell had picked up a can of milk that had a rodent attached to it which caused her to start screaming and both she and Dewandya starting running away from it and Dewandya's basket ran into a pole, causing her to hit her knee and fall on her right side."
In her deposition, Eula Green stated that at the time of the incident she went to see what was wrong with the plaintiff. She then stated, "and then I don't know if she tripped over the buggyI don't think she tripped over the buggy. But I know shewhen she started falling, she had already hit the pole and the buggy was tilting over then." Ms. Green was specifically asked if she saw the plaintiff's knee strike the pole and she responded affirmatively. Ms. Green then said that the plaintiff did not fall all the way to the floor, but then the buggy fell over on the plaintiff.
At trial, Ms. Green testified that she heard the plaintiff "holler" and she was shaking her hands and falling and stumbling backwards and her buggy was tipping over. She also stated that she did not see the plaintiff hit the pole, but thought that she did strike it because the plaintiff had a scratch on her knee.
Ms. Green also acknowledged that she had previously stated that the plaintiff hit her knee on the pole on the canned milk side of the aisle, not the side with the spices, even though at trial, she testified that she did not see the plaintiff strike a pole in the store.
Given the numerous discrepancies of the testimony and statements given by the plaintiff and Ms. Green, we conclude that the trial court was not manifestly erroneous or clearly wrong in finding that the plaintiff failed to establish a causal connection between the discovery of the mouse and her knee injury. This finding is further supported by the photograph of the grocery aisle which shows that the pole the plaintiff claims she struck was very small, was not protruding into the aisle and was at least ten feet away from the point where the plaintiff said she saw the mouse. Further, store personnel testified that the mouse was found on top of the can of milk and the can was on the shelf, contrary to the plaintiff's claim that she threw the can when she saw the mouse. Additionally, Eugene Johnson, an assistant manager at Super 1 Foods, testified that the buggies used in the store are large and heavy and it would be very difficult to tip a buggy over. Therefore, this portion of the trial court judgment, denying the plaintiff recovery for the knee injury, is affirmed.

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
In her assignment of error, the plaintiff seems to argue that the trial court erred in failing to award damages based upon the plaintiff's fright in discovering the mouse. We find this argument to be without merit.
It is well established in our jurisprudence that a claim for negligent infliction of emotional distress unaccompanied by physical injury is viable. Clomon v. Monroe City School Board, 572 So.2d 571 (La.1990); Barrino v. East Baton Rouge School Board, 96 1824 (La.App. 1st Cir. 6/20/97), 697 So.2d 27; Norred v. Radisson Hotel Corporation, 95 0748 (La.App. 1st Cir. 12/15/95), 665 So.2d 753. Any recovery for mental anguish tort damages must be based on La.C.C. art. 2315, which provides that, "Every act of man whatever that causes damage to another obliges him by whose fault it happened to repair it."
*292 The duty-risk analysis is used to assist our courts in determining whether one may recover under La.C.C. art. 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Mathieu v. Imperial Toy Corporation, 94-0952 (La.11/30/94), 646 So.2d 318; Barrino v. East Baton Rouge Parish School Board, supra. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability.
The plaintiff argues that the defendant had a duty to take reasonable precautions to keep the store free of mice, citing Thomas v. Hanover Insurance Company, 321 So.2d 30 (La.App. 3d Cir.1975). In Thomas, the plaintiff, a female patron of a laundromat, was injured when she saw a mouse on her foot, screamed and jumped up from her seat. The plaintiff's foot came down on the mouse, causing her to slip and fall, injuring her hip and back. In applying the duty-risk analysis in Thomas, the court found that the laundromat's duty included the duty to discover reasonably discoverable conditions on the premises which may foreseeably constitute a hazard to business guests. However, the court found that the laundromat would not be liable for an injury resulting from a hazard unless it had actual or constructive knowledge of it. The court also found that mice constitute an unreasonable risk of foreseeable harm to customers, stating, In a business establishment such as a laundromat, where the customers are principally women, whose fear of mice is well known, a reasonably foreseeable hazard is that if a woman sees a mouse on or near her person, she will jump and run and, in so doing, may suffer injury. In Thomas, the court also found that the laundromat breached its duty because it failed to take reasonable precautions to keep rodents from the premises.
Under the holding in Thomas, the defendant had a duty to take reasonable precautions to keep the premises free from rodents. In the case sub judice, the defendant established that such precautions were taken. The defendant used the services of a pest control company which used nonchemical means for controlling rodents on a regular basis. Also, store employees testified that there was not a pest problem at the store. The defendant also introduced records from the Department of Health and Hospitals, compiled by their inspector, Lyndia Stokely, showing that the defendant store did not have a rodent problem. Therefore, the defendant took reasonable precautions to prevent mice in the store and therefore, no duty owed to the plaintiff was breached.
Even if the defendant had breached this duty, the recovery for mental anguish tort damages has been limited to cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Moresi v. State, Department of Wildlife and Fisheries, 567 So.2d 1081 (La.1990); Barrino v. East Baton Rouge Parish School Board, supra; Norred v. Radisson Hotel Corporation, supra. In Moresi, the court listed various types of cases involving "genuine and serious" emotional distress such as negligent transmission of a telegraph message announcing death, mishandling of corpses, failure to maintain, install or repair consumer products, negligent damage to one's property while the plaintiffs were present and saw their property damaged, and cases allowing damages for fright or nervous shock where the plaintiff was actually in great fear for his personal safety. Norred v. Radisson Hotel Corporation, supra. See also Lennard v. State Farm Mutual Insurance Company, 26,396 (La.App.2d Cir. 1/25/95), 649 So.2d 1114.
Under this standard, the plaintiff has failed to show that she is entitled to damages for mental anguish. Although the plaintiff was undoubtedly startled by the discovery of *293 the mouse, it is not clear from the record that the plaintiff actually touched the creature. The only evidence of that fact is the plaintiff's testimony and the trial court found that her testimony was not credible. The plaintiff indicated that after the incident with the mouse, she went ahead and purchased the grocery items she had in her buggy. Further, other than the plaintiff's initial surprise from seeing the mouse, the record does no show that she suffered serious mental distress or was in great fear for her personal safety. The record does not show that the plaintiff suffered any lasting psychological effects from this incident. Therefore, the trial court did not err in failing to find the defendant breached its duty or in failing to award the plaintiff damages for discovering the mouse in the defendant's store.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment in favor of the defendant, Brookshire Grocery Company d/b/a Super 1 Foods and the Hartford Insurance Company, rejecting the demands of the plaintiff, Dewandya Powell. All costs in this court and in the court below are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] The defendant argues that the plaintiff, in her assignment of error, objects only to the trial court's ruling as to liability and did not assign as error or brief the issue of damages and therefore, the issue should not be considered on appeal. URCA 1-3 provides that the courts of appeal will review only issues which were submitted to the trial court and which are contained in the specifications or assignments of error unless the interest of justice clearly requires otherwise. The issue of damages for physical injury and emotional distress was raised in the plaintiff's petition. Her medical expenses were stipulated. In her motion for new trial, the plaintiff argued that the trial court erred in failing to make an award for damages sustained when the plaintiff picked up the can with the rodent attached. The trial court denied the motion for new trial. On appeal, even though the plaintiff again does not argue a dollar amount she feels would compensate her for emotional distress, she does argue in her brief that the trial court should have made such an award. Therefore, we reject the defendant's argument that the issue of damages is not properly before this court. However, as will be stated below, the plaintiff has failed to show entitlement to such damages for physical injury or emotional distress.