743 So.2d 924 (1999)
Vivian M. TURNER, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 32,423-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
Gregory L. Kelley, Bossier City, Counsel for Appellant.
Charles G. Tutt, Shreveport, Counsel for Appellee.
*925 Before NORRIS, STEWART and GASKINS, JJ.
GASKINS, J.
The plaintiff, Vivian Turner, appeals from a trial court judgment dismissing her suit against her uninsured motorist (UM) insurer on the basis that she failed to prove that a collision took place between her car and that of an unknown hit-and-run driver who allegedly left the scene before the police arrived. We affirm the trial court judgment.

FACTS
In October 1997, the plaintiff filed suit against "John Doe" and State Farm Mutual Automobile Insurance Company, her own UM insurer, alleging that she was injured in October 1996 when a convertible driven by an unknown hit-and-run driver rear-ended her car near the intersection of West 70th Street and Mansfield Road in Shreveport. In addition to personal injury, she alleged property damage. She also sought penalties and attorney fees from State Farm for "bad faith handling" of her claim.
The case was tried in October 1998. In addition to her own testimony, the plaintiff presented the testimony of the police officer who came to the scene. As to her injuries, she presented the testimony of her treating doctor, her private sitter, two relatives, and two friends. At the conclusion of the plaintiff's case, the claim for penalties and attorney fees was dismissed by agreement. Testifying for the defendant were the State Farm estimator who examined the plaintiff's car and an accident reconstruction engineer. It also presented the deposition testimony of an emergency room doctor who treated the plaintiff on November 2, 1996, and an orthopedist hired by State Farm to review the plaintiff's medical records.
During the bench trial, the plaintiff was impeached with her deposition testimony and contradicted by other witnesses numerous times on a variety of issues that ranged from the details of the accident to the extent of her injuries. The police officer testified that the plaintiff pointed out to him what he characterized as "light" damage to the rear of her car. However, it was also noted that his report gave the date of the accident as Friday, October 11, 1996; the plaintiff testified that it occurred on Thursday, October 10, 1996. The plaintiff's treating physician testified that she did not mention being in a car accident at her initial appointment with him almost four weeks after the alleged incident. The State Farm estimator testified that the only damage he observed to the plaintiff's vehicle was "[v]ery, very light," and consisted of paint damage on the rear bumper and some small degree of "pitting." The accident reconstruction expert testified that he detected no evidence of impact damage or of "any collision of any magnitude" to the bumper.
In a written opinion, the trial court dismissed the plaintiff's claims, finding that the "preponderance of the credible evidence accepted by this court fails to establish that an accident occurred on October 10, 1996 involving the plaintiff and any other person which resulted in any injury to the plaintiff." Costs were assessed against the plaintiff.
The plaintiff appeals.

MANIFEST ERROR
The plaintiff contends that the trial court erred in dismissing her claims where her testimony established that an accident had, in fact, occurred. She argues that the testimony of the police officer who came to the scene supported her claim that her car was damaged. On the other hand, the defendant requests affirmation of the trial court judgment. It maintains that the trial *926 court properly concluded that the plaintiff's account of the accident and her resulting injuries and the testimony of her private sitter were unbelievable. In particular, the defendant refers to the numerous occasions when the plaintiff was impeached with her deposition testimony and then claimed that the deposition testimony was inaccurate or "changed."
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court has announced a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993).
When findings of fact are based on evaluations of witness credibility, the manifest error/clearly wrong standard demands great deference to the trial court. Rosell, supra; Powell v. Brookshire's Grocery Company, Inc., 30,047 (La.App.2d Cir.12/10/97), 705 So.2d 286. Only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra.

DISCUSSION
The only testimony presented by the plaintiff to the effect that an accident occurred between her vehicle and that of a phantom driver was her own. A review of her testimony demonstrates that she was impeached on several pertinent points concerning the alleged accident and the events supposedly surrounding it. In her trial testimony, she stated that after she crossed the intersection with Mansfield Road, going west on West 70th Street, she heard a "big bump" noise behind her, as though a car had traversed a dip located in the road so fast as to scrape the bottom of the car. Looking in her rear view mirror, she saw a car coming "pretty fast." Knowing that she was going to be hit, she put her foot all the way down on the brake so as to avoid hitting the car in front of her.
She also testified that even after going through the intersection, she and the cars in front of her were proceeding slowly. (According to the plaintiff, the speed limit was 35 or 40 mph; the police report stated that it was 40 mph.) In her deposition, she estimated the speed of the cars ahead of her as only 10 to 15 mph. She also stated that she was "almost at a complete stop," going only between 6 to 8 mph before she heard the car approaching behind her. When queried at trial by defense counsel about these extremely slow estimated speeds, the plaintiff dismissed them on the basis that the numbers were "just a matter of speech" to illustrate that the speeds were low.
She testified at trial that she was wearing both her lap and shoulder seat belts. She was confronted with her deposition in which she specifically testified that she was wearing the shoulder harness but not the lap belt. The plaintiff denied making that statement and insisted that she knew that depositions could be wrong. At trial, she maintained that no part of her body hit the steering wheel because she was wearing her seat belt. However, in her deposition testimony she asserted that her upper abdomen around her stomach hit the steering wheel. She denied making this *927 statement. She then said she went forward in the collision and that her chest "could have hit it, just a barely little touch."
At trial, the plaintiff testified that she got out of her car and checked for damage on the vehicles with the other driver. She was confronted with her deposition testimony that she did not get out of her car and look at the other car. She denied this statement, insisting that she had seen depositions "changed all day long." She was also confronted with another discrepancy between her trial and deposition testimony on the question of whether the other driver pulled his car off the road onto a nearby parking lot. At trial, she said she saw him get back in his car and drive to the parking lot; in her deposition, she stated that she didn't see him get back in his car because she was praying and assumed he went to the parking lot because he didn't drive past her.[1]
The plaintiff asserts that her testimony that an accident occurred was corroborated by the police officer who wrote the accident report. However, this officer based his report on the facts as reported to him by the plaintiff. Beyond talking to the plaintiff, he conducted no investigation and did not look for evidence such as skid marks. The plaintiff pointed out to him what he characterized as "light damage" to her car.
Additionally, there were discrepancies between the testimony of the officer and the plaintiff. She testified that the alleged accident occurred the evening of Thursday, October 10, 1996. However, the officer testified that, according to his written report, he arrived at the accident scene at about 3:58 p.m. on Friday, October 11, 1996.[2]
As to the testimony of the defendant's own estimator, he testified that he examined the area indicated by the plaintiff and noted only "[v]ery, very light" damage. Specifically, what he detected was paint damage and minor "pitting." He estimated that repair could be made for $208 which included only 1½ hours of work. He further testified that he made no effort to determine whether the damage was caused by any particular event.
The defense's accident reconstruction expert testified that he conducted a thorough examination of the bumper area of the plaintiff's car and found no evidence of impact. There were what he characterized as "flakes" in the paint caused by something possibly hitting the bumper, but not by an accident. He described it as "very, very minor" and concluded that there was no evidence of any collision of any magnitude to the plaintiff's car. On cross-examination, he testified that if there had been an accident, it was "extremely minor."
Based upon our examination of the record, we find no manifest error in the trial court's ruling that the plaintiff failed to carry her burden of proof. Her own testimony was discredited by contradictions and repeated impeachment. The testimony of the police officer was based in large part upon what the plaintiff related to him; *928 additionally, it called into question when the alleged accident supposedly happened. The evidence presented by the defendant further disputed her claims by establishing that any damage to her car was extremely minor and could not be connected to her account of the so-called accident. The trial court observed these witnesses and made credibility calls which itas trier of fact was in a unique position to render. The trial court's conclusion was a reasonable one, and we are unable to disturb it.

CONCLUSION
The judgment of the trial court dismissing the plaintiff's claims is affirmed. Costs are assessed against the plaintiff.
AFFIRMED.
NOTES
[1] The plaintiff's credibility was also repeatedly called into question during her testimony about the injuries she claimed to have received in the accident, as well as the medical attention she sought. Among other things, she claimed that her doctor ordered total bed rest and that she required the assistance of a sitter for a period of several months. However, the doctor testified that she should have been able to perform regular housework even when he first saw her and that his notes made no mention of complete bed rest. An orthopedist who reviewed the plaintiff's medical records described the list of services the sitter claimed were necessary for the plaintiff as "borderline absurd." The emergency room doctor who examined the plaintiff almost a month after the alleged accident testified that she did not require physical therapy when he saw her and that bed rest would have been inappropriate for someone with the injuries she claimed.
[2] Interestingly, the plaintiff's petition alleged that the accident occurred at about 5:40 p.m. on October 11, 1996. Billie Jones, a witness for the plaintiff, testified that the accident was on October 11.